Marsha Crone from District Court in Beaumont who's sitting with us by designation. First case of the afternoon is number 1410513 United States v. Herrera. We hear from Mr. Van Beard first. May it please the court counsel this case directs the court's attention to the proper application and interaction of the restitution statute with relevant conduct considerations, purposes of sentencing. And before I dive in for a few minutes into some of the details, I'd ask that the court consider the following idea. There is a difference between relevant conduct acts and restitution victims because I actually think that's the key to unlocking the case into reconciling these two disparate bodies of law. Relevant conduct, of course, as the court knows, but just by way of brief reminders, a function, a creation of the guidelines, the purpose of which is to establish base offense levels. We know this from looking at guideline 1B1.1, 1.2, and most importantly 1B1.3 where that specific language is set out. There is no mention of relevant conduct's use within the guideline framework for establishing restitution. The Commission has made that evident. Instead, restitution is a function of congressional direction and, of course, it derives from the NVRA and I'll just refer that as the Restitution Act 3663A. Well, I was wondering, it seems to be, you know, there's a case in point if I'm not mistaken here. Ms. Herrera executed an agreement that said that she would agree to grant restitution to other people than the particular victim here or based on other conduct. No, with respect, I don't think, in fact, that's what the penalty provision said and certainly nowhere else in the plea agreement does it go that far. The restitution statute, Judge Jones and members of the panel, focuses on the notion of reimbursing or making a victim, a particular victim, whole. That's the default position. There's approximate causation requirement and, of course, we're talking about the particular loss that arises from the offense in question. I'm looking at the quote from the plea agreement. It seems to say she agreed to pay restitution to victims or to the community which may be mandatory under the law and which Herrera agrees may include restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone. And now your inquiry in that language brings us to what I think is the salient issue, which is where is the intersection and are the two different provisions of law coincident and are they exactly congruent? And we say no. The statement of those sentences in the plea agreement, the statement of the statutory maxima, supervised release, the restitution language, which is increasingly common, well, actually maybe decreasingly common in light of recent opinions of the Court, this restitution recital is actually referring to the notion that in a relevant conduct case, and this is a relevant conduct case to a degree, you would properly look at what the harms were that arose from this defendant's acts in this particular offense. And what I'm referring to is simply this. This is a multi-count indictment. She pleaded to one count. That's quite pedestrian, if you will. However, all of the other dismissed counts refer to the same victim, the same conduct, the same proximate causation, that is to say the same losses. They were aggravated. Nothing is remarkable there. That is an illustration of the proper application of the statute. You have victim, you have causation, you have loss. There is nothing particularly out of the judge Jones, I think you were looking at it as well, and to start adding in other non-identified victims where literally it could be anyone. There was no... But I thought that the ACS people were the victims of this offense because she used the money she stole from them. She robbed Peter to pay Paul. No. The victim in this offense is what I've referred to in the brief as the district. Right. You have a the victim, but we have this concept into the law of victim means a person directly and proximately harmed as a result of the commission of an offense. And so she committed this offense and part of what allowed her to continue to fool her employer was that she was using money from another employer to pay. And so why aren't they also a victim of this offense? They're not just some other person that she independently embezzled from having nothing to do with this. There was a unity or a connection among all of these embezzlements. I think that certainly is a charitable construct or interpretation of what actually happened, and we bear the burden here, so let me address it if I will head on. We know from the record that she made payments with embezzled funds from her other employer, and she paid off debts owed to the district, the victim here. But I disagree with you to say, well, because she had other acts that were relevant for loss calculation, for relevant conduct purposes, that necessarily says, well, then these are victims for purposes of the instant offense. They were not brought up. What case makes this very fine? I mean, if I run out the door and I mug Mr. A to go pay my light bill, why is Mr. A not a victim? What case would help me understand this argument? This one is going to be the one that you're going to set that straight, I think. Oh, so it's this case. I think it is. Okay. Well, what you're saying is that the government had to indict ACS in order to make them a victim? I mean, indict her embezzlement from ACS in order to make them a victim? No. Well, so what are you saying? That's not what I'm saying, because if you look at the statute, of course, and I'm talking about the Restitution Act, there is a carve-out. You can identify if the parties agree that there are other victims, then the government can trigger that. The government wrote this plea agreement. The parties agreed to sit down and to say there are other victims that we are going to identify. Other people or entities will identify as victims for purposes of our contract. But you're saying this statement, restitution to victims or to the community, which she signed, is a nullity unless she specifies who they are. So the plural use of victims is to be ignored, and the concept of the community is also to be ignored, because unless they are specified by name, it's meaningless. Unless the parties have a meeting of the mind as to who they are, and it's expressed in the contract, certainly. Well, to me, victims is pretty clear. It's plural. These aren't some random people that she went to their house and robbed money out of it, which would be some different scheme, or held up at gunpoint on the street corner one day. This is the same scheme. I don't find it that shocking that ACS is going to be a victim under this if we're construing the language. You're the one who's making this language completely a nullity. With respect, and I mean that absolutely sincerely. Well, typically when somebody says with respect, they're about to disrespect, but that's okay. Go ahead. And when someone says something is clear, I generally find that it's not. So there we are. And you had said that this is clear, and I don't think it is. The thing that I think is clear, I'm talking about the plea agreement language you just referred to. I think what is clear, for purposes of your adjudication, is that we have a congressional statute which says you may agree as to other, what I call the opt-out or the triggering provision, you may agree as to other entities that you're going to pay restitution to. There was no agreement there, and I think it's also important to point out, and I think the record citation, Judge Jones, would be 121, the parties did not, the U.S. attorney, the trial attorney below, and that is not my adversary here, they did not anticipate this. They did not have a meeting of the minds of these other people. Well, how do you know that? Because the attorney was telling the district court that, and there was no attempt by the United States to say otherwise. I think it's a reasonable inference. I mean, everyone in this particular environment, they all know each other. Suppose something had been in the newspaper about this because this woman appears to have come from job to job embezzling, and some other previous employer came forward and said, look, she stole from us too, or, look, she had a credit card at the gas station and somehow she, you know, charged too much on that and applied it to the mud as well. I mean, just whatever you can conceive of as other people coming forward. Sure. I mean, it seems to me highly likely that relevant conduct here, I don't understand your argument about the guidelines at all, because we're talking about restitution, and we're talking about the term relevant conduct vis-a-vis restitution to victims, so. Well, let me see if I can expound on that, and I'll touch on something to respond more. Some of these other expenses, those were directly to this mud. Yes. Yes. We're on shakier ground as to some of the others, that's true. Absolutely, Judge. You had mentioned scheme earlier, and, of course, if you look at the relevant conduct guideline itself, we have a sole defendant here, so the first provision of the guideline is looking at all of that defendant's acts, omissions, procured, so on and so forth. Scheme isn't implicated. Well, scheme doesn't, to me, require more than one person. Well, I'm simply pointing out what the commission has written in the guideline, so the notion. Her scheme was to do this. She didn't involve other people in it, I agree. So if scheme requires more than two people, then that's an unhelpful word. But her design, her concept, her plan. I'm trying to respond both to your use of the word scheme, and Judge Jones thinks she doesn't understand the notion, the argument I'm making, which means I've got some lifting to do here. The relevant conduct guideline looks at acts, it looks at the design of the relevant conduct, the purpose of the relevant conduct provision, so that the district judge, the district court, can see basically everything that was going on. And this is why, for example, for purposes of loss, some of those amounts do flow into the calculus, but not for purpose of restitution. There's not perfect symmetry here. The language is not the same. I'm certainly willing to accept that, but what I'm not, but what I'm not accepting is that relevant, there's no footnote or explanation that relevant conduct asterisk means relevant conduct within the guidelines, and not relevant conduct with regard to restitution. It just seems like two ordinary words to me. I don't think so. Again, with respect, relevant conduct has a very specific meaning for purposes of federal sentencing, and it's set out. But you keep, you're the one who's drawing the distinction with restitution. We are the non, well, certainly, excuse me, I'm sorry. That's okay. No, forgive me for interrupting. We are the non-drafting party, and we also understand what relevant conduct. Okay, let me ask you this. You think United States v. Herrera is going to announce some new principle that's helpful in this area. I do. Announce that. Tell me, if I were writing, you were holding my pen to write this opinion, what is this principle? I would say that relevant conduct and restitution are not necessarily and completely coincident that restitution has greater limitations as set out by 36, excuse me, 3663A, that the focus is properly on victims, whereas relevant conduct looks at a defendant's acts. And that the, I'm sorry, Judge Brown. There's a lot of case law on that already. This is not some new notion on that. Between loss of mail, the relevant conduct, and restitution. Yes, I agree. It's a different concept. I appreciate your observation because it allows me to at least share with you what I think is going on below. But I think the problem here is you've got more than one victim. You've got this other entity that's a victim as well. And you're just glossing over that even though the plea agreement seems to acknowledge that there are other victims in the community. I would say that there are other entities that could have been characterized, but there was certainly no agreement anywhere in that plea agreement to pay ACME or ACS. And what I was going to respond to you with, what I see happening below is very analogous to what happened in the mid-'90s when probation and some district courts began to conflate the notion of sentencing liability with conspiratorial liability. That is to say, to allow relevant conduct to expand improperly. This court, through a series of opinions, pointed out that the commission had said relevant conduct is less expansive. Here, we have something that's not a perfect analogy, but it's analogous. We have the probation office and, by extension, the district court who adopted the PSR's rationales basically saying if it comes in for purpose of loss, it's coming in for purpose of restitution. And what I'm suggesting, and yes, Judge Haynes, I think this is an opportunity for the court to speak very clearly on the matter. I think this is an opportunity to say these are different concepts. So would we have to distinguish or overrule Miller? No, I don't necessarily think so. But I do think that it's important, well, first of all, I wouldn't be asking you to do that because I'm aware of the circuit's rules, but no, you don't. But I think it's important for the court to speak to this. This isn't the first case that's brought up restitution. There are a number in the system. There are at least two that the court has kicked back. This is, I think, the latest in that series, the trilogy, if you will. Well, you know what? I'm not . . . let me . . . sorry to interrupt, but it seems to me this kind of problem could be stopped at the pass, particularly when the federal public defender is representing a defendant by using some other word than relevant conduct in the plea agreement. I mean, you're not potted plants. You're there to represent your client and you could have specified. You knew ACS was out there, presumably. That wasn't a surprise. I'm speaking for all defenders. I'd like to think we're not potted plants and I would also suggest that no one else is either that's involved in this. The short of it is I do think there is an opportunity here to make a poignant statement and a statement that will further guide the parties below, but I think this case is remanded for a redetermination. I mean, the only other problem with that is that as Judge Haynes said, this is so clearly related to the particular victim that it would be almost dicta to go beyond that and you can respond to that in rebuttal. In rebuttal? Yes, sir. Thank you. Okay. Ms. Birch? Thank you, Your Honor. May it please the court, counsel. The district court did not err here. The district court entered a restitution order that's supported by the law and is supported by these concepts of fairness and justice. We have victims here. They had losses. Those losses are directly related to the offense conduct of what she was convicted and the district court did the right thing. Well, that's right is not necessarily what the law is and the law is sometimes narrower than what's right, so that doesn't tell us much, but suppose someone, one of her prior employers, suppose she was moonlighting somewhere else and stole from them too and the government knew about this and then tried to fold that into the restitution order as relevant conduct. Would you say that was the right thing to do? I wouldn't, Your Honor, because I don't think that would be supported by the guidelines under relevant conduct. I don't think that that specific scenario with prior conduct like that would be brought in, but here she . . . Well, it could have been contemporaneous. And contemporaneously, I do think it would fall under relevant conduct under the guidelines. Well, and then you're saying it would fall under relevant conduct even though she had no reason to believe when she signed the plea agreement that this other employer was going to come forward? Your Honor, respectfully, she signed the plea agreement that agreed to relevant conduct and whether she anticipated who might come forward or who might not or what probation was going to recommend, when she made the agreement for relevant conduct, that was her agreement to be held responsible for anything that qualifies as relevant conduct. But you'd have to agree with Mr. Bambeer, don't you, that the concepts of a victim under the MVRA is different from relevant conduct? I agree that the MVRA focuses on victim and that relevant conduct has a different focus. However, here we have this intersection of victims and our victims are not two totally separate entities that never the twain shall meet. They meet and they meet in a very real way in this case because victim number two's losses are caused or incurred trying to continue this scheme. It's like a Ponzi scheme. Well, it's . . . Sort of. Sort of. I mean, and all of it is related really because she's taking federal offense victim, the district, and using their money to pay her state restitution off, and then while she's now been uncovered at the district, she's taking ACS's losses to cover some of that. And then when she gets fired, she goes and files her false unemployment claim to again pull that money out to continue victimizing that same victim. That was her whole scheme. I mean, I still think scheme can be used when you're talking about one person. That was her whole scheme. Her whole scheme is to get money she's not entitled to whenever, wherever, and however she can do it and keep herself afloat. Well, what about Mr. Beard's suggestion that the law ought to be that you have to specify the victims in the plea agreement other than the victim that's charged in the indictment? So if there's anybody else that's not mentioned in the indictment, it needs to be set out in so many words, and then that way we won't have any confusion. Certainly setting out victims by name would make this exercise easier. However, a lot of times you don't know until after probation has done their very thorough investigation who everybody's victim is. But if you don't know, then how can there be a meeting of minds? Because the meeting of the minds is about relevant conduct. Yes, we are going to hold this person responsible for their relevant conduct, even if maybe every penny of that isn't known at the moment we signed the agreement. What you're saying is if the person is a victim of the relevant conduct, then they are a victim for purposes of the plea agreement, and that's how you know, and it ought to know who she's victimized. In this case, because she signed that language in her plea agreement. Did she know about, was the ACS situation known to all the parties beforehand? The ACS situation was uncovered during the course of the investigation by the FBI, and so she did know about the ACS losses when she signed her plea agreement. What about the Workforce Commission claim? The Workforce Commission claim, I'll have to reach back in the stretches of my memory. I'm not sure exactly when that came to light, Your Honor, but I want to say that she did know that, at least she knew she had filed it for sure. She knew she had filed the false claim. Now, whether she knew that the FBI knew about it yet, that I'm not sure of. Now, can I ask you something on that, on the Workforce Commission? If we were to affirm the award that was based on paying that premium or whatever it was, and then down the road, the Workforce Commission or whoever rebated that premium back, or there's some suggestion that there's some way this money could come back to them aside from the defendant, is there a mechanism, should we insert a mechanism, or is there already a mechanism for her to not be tagged with that? Because she shouldn't recover the same amount twice, or he should, the district should from her. Well, the victim at the time told probation that they had attempted to get that recovered and were not able to do it, and it was the understanding of all the parties at that time that it was not going to be . . . Ever? Ever. But, to answer your question, always there's the opportunity to come back to the district court and ask for that judgment to be amended or reformed based on something that happened later. And what about the audit fees? It seems like it's a little bit difficult to estimate the amount that was just attributable to this further investigation caused by her embezzlement. I mean, I understand it's the difference between the price of the regular audit and what it cost after this investigation was undertaken, but it seems a bit imprecise to necessarily attribute all that, or were all those proper expenses to be charged for auditing? I appreciate that question, Your Honor. I do think that the fact that the audit fees were so specific, you know, right down to the penny as far as what did they cost before versus what costs were incurred to investigate the theft and identify the perpetrator, were submitted by the victim. And I think it's important to keep in mind here that the victim is a one employee entity, and their one employee just got fired. I mean, they have to hire somebody to figure out what's going on. And so when they do that, they incur these additional audit fees, and those are the fees that they submitted to probation to the court. But what about the lack of specificity that, you know, we have this differential, it used to cost $4,000, now it costs $16,000, ergo $12,000 was the extra amount. Is that really all we have, or is there anything else we can look to to say what these fees were for? Well, they didn't testify at the sentencing hearing about the audit fees. However, they did support, they did submit their paperwork to probation. Probation, I don't believe, attached that to the pre-sentence report. So unfortunately, I don't think that's there. So you're saying there was paperwork, we just don't have it? There was something, there was paperwork. But as far as your question about how specific it was, I don't believe it was specific at all. I mean, it just gave, this is the amount, and we know that this is what it cost before, and this is what it costs now when we're in an investigation. Well, because, I mean, typically auditors, lawyers, whoever that charged for their time will have some description, and they won't just say, please pay me $16,000 for my time. So was there like a fee bill somewhere in this process, whether included in a record or not, that probation could have looked at? There are none in the record for sure, and I can only speak to the regular practice of the Lubbock Probation Office to collect those types of documents. But I do not know the answer to your question as far as how specific the bill was. I do want to point this out. You know, the district court is, can look at the pre-sentence report and rely on its reliability, especially in the absence of evidence to the contrary. And so while I recognize that it's the government's duty to prove up these types of expenses, the defendant objected, but then the defendant did not present any evidence, didn't call the auditor . . . But how do you present evidence of a non-fact? I mean, let's say there weren't any fee bills. They just said, pay us $16,000, and they did. So all we have is this differential. What evidence is the defendant supposed to show, except to say that ain't good enough? Certainly, they could have subpoenaed those auditors or those documents and brought them in to object in more detail and preserve the record. But I mean, it seems to me if your argument is insufficiency of the evidence, you aren't required to go get evidence to basically supplement the lack of evidence by the government. Their argument is insufficiency of the evidence to prove up this differential. It's not that witness number one said something happened, and they didn't bring witness number two to contradict it. I get that. When the PSR relies on witness number one, we can do that, and they need to bring in witness number two. But here they're saying there is no witness number one. We just have numbers, and we have no backup to that whatsoever. Why are they required to go get the backup and sort of prove the government's forum in order to preserve the challenge? They're not required to go get the backup, but when they make an objection and they put something in the objection that says, hey, these were just to set the book straight, but that's not based on any evidence. They're just objections. We would submit that those audit fees were substantiated enough by way of the victim providing those numbers. And again, I would just point out that we're not talking about, oh, we think it's about $5,000. I mean, they gave some pretty specific numbers, and they were able to compare those to past years. And so I would submit to the court that that is sufficient evidence of that audit amount. Well, would the med pay the audit fees without any kind of specificity? They just pay the bill? I understand they actually pay these bills. Would they just pay this without any kind of backup? Well, I would presume, like I think the court would, that there was that type of bill, and there was that type of backup, but because it's not in the record, I can't tell you for certain that they, you know, I don't have a copy of the bill. I know that they submitted some paperwork, something, to probation that resulted in probation putting those very specific amounts in the PSR. And you said the practice of the Lubbock County probation or the probation that's located in Lubbock County, what do they normally do with backup paperwork? In the Lubbock, I'm speaking about the U.S. Probation Office and the Lubbock office. And they do normally send out a face form to the victims. Lots of victims never return them. Some victims return them, and they provide the documentation. And then I don't know what probation does with it. I think they normally keep it on hand, but I don't know once the PSR is written, if they just— I mean, should we order that the record be supplemented with whatever probation relied on to come up with these numbers? Your Honor, I'd be very happy to check with the probation office and see what, in fact, they do have. What she was doing was basically stealing the customer's payment so they didn't get put in the ledger, right? Correct. And if you have to hire an auditor who presumably has to go out to a bunch of the customers or look at the customer's payment records and then reconcile the monthly account of receipts to the utility district, I don't think this amount is very unreasonable at all. I mean, it's just, you know, it's not a small undertaking. And my understanding is that they actually went to the Concho Rural District. The way their payments were set up is they have the water district, but then they have another district that is helping to process these payments, and so they went to that entity, and you're right, they had to basically go through and reconcile, and they even had to deal with it as far as cash payments, money orders, all of these different types of theft, because she did some of these different types of theft in different ways. And so— Well, and even setting, you know, you said earlier that the objection about setting the books straight wasn't very specific, but it seems to me that even setting the books straight is caused by her crime. I mean, her crime was messing up the books to hide her crime. Now they've got to set the books straight to find her crime and to set the books straight. I mean, so that is an effect of her messing with the books. And it's all part of that investigative expense that they have had to incur, you know, during the course of the investigation. And so based on this court's precedent, that just absolutely should be included in the loss amount. The district court didn't mess up. The district court said, this is the amount, and I'm going to make her pay it. If the court doesn't have any other questions, I'd be happy to cede the rest of my time. Thank you. Thank you. Okay, Mr. Ben-Peter. Judge Jones, I think we left off with references to potted plants and what could be done earlier in the process. That wasn't personal. I was just saying that, you know, you don't— counsel doesn't have to agree to relevant conduct as a term of these plea agreements. I didn't take it personally. In fact, I'm glad you said it, because it does make the point I want to go into, or allows me to make that point. They draft the agreements. That side drafts the agreements. Ambiguities and similar things, in order to their detriment, not to ours. Now, I agree with you. We could be more aggressive, and we could draft agreements. Well, when you dismiss them down— it's a two-way street, because you dismiss a multi-count indictment down to one count, so that's a pretty darn thing. Are you saying that they won't allow you to say, look, I'm not agreeing to that paragraph in the agreement? Okay, well, then it's a negotiation. I mean, I've negotiated a lot of settlements as a lawyer, and somebody sends you something where they're getting a broader release than you're being given and all that. You don't say, oh, well, I guess I just got to accept that and hope the ambiguity will be construed against them. You say, no, I want my deal, and that's it. I didn't agree with you more, and I suspect that, depending on how this is written, your opinion and what it said, that we'll see all sorts of new emphasis on what is and what isn't accepted. In the past, before these recitals were so expansively interpreted, such as in a case like this, there wasn't a problem. You had mentioned consideration, Judge Owens. Let me mention something. Three counts were dismissed. This was a case that's subject to grouping. The loss calculation would be the same. The only difference would have been the difference in $300 worth of special assessments. That's the only difference whether this individual had pleaded to one count or to four. It's a rather bizarre position to take to say that that $300 savings in special assessment was worth $22,000 in restitution. But the Miller case was from 2005, and that's the case that said, granted on plenary review, but nonetheless said this exact language is fine and it encompasses victims other than the person named in the indictment, or the victim named in the indictment. So it seems to me you all are on notice. If you don't like the way it's put, then you need to say, hey, we want to specify this or that, or we only want to limit it to the district or whatever the situation is. I think the reason it wasn't done that way is because she was understanding she needed to make restitution to everybody that was part of this scheme. I mean, I don't think it was an accident. I don't think it was poor lawyering on the part of the FPD. I think it was, this is the agreement, that now she's trying to retrade the deal. Well, we actually know from, and I appreciate your speculation, but we know from the record, because we had the trial attorneys who were speaking on the record, that they were not anticipating the $22,000 being included. That is the record. The question becomes, my adversary had said, well, a lot of times you don't know what's out there. Well, that's true. But that doesn't mean that everything comes in at the back end. We still look at, in terms of restitution awards, we still look at the statute. But that's the way the deal tends to work. I mean, in other words, you know, okay, and I don't really care what the lawyer says now, I'm saying that when you're doing it, whether you know it's this particular 22 or this particular victim, you understand that to cut the deal you're cutting, you're going to have to agree to restitution to the victims measured by relevant conduct. That's the deal that the U.S. Attorney's offering you. If it isn't a good deal, don't take it. Judge Haynes, no one's suggesting that this defendant is not going to pay restitution. We're objecting to the inclusion of this $22,000 as part of the federal order. The state of Texas has charges against her, and I took the liberty of confirming today that they're intent on pursuing restitution for their state court victim. Well, and she'll get credit. I mean, she's not going to pay the $22,000. That was my question to counsel opposite. If she pays the $22,000 ACS as part of the state plea or disposition, she doesn't have to pay it again in the federal. Sure, and I'm not suggesting that there was a windfall scenario. What I'm suggesting is it's not as though someone's walking free from having to repay. Judge Crone, when you were talking about audit fees and what have you, let me make a semi-concession. I think we are on thinner ice on my side on the notion of the audit fees, but what I would respectfully ask you and your panel members to focus on is the role of fact-finding or the absence of fact-finding at the district court level in terms of what was or was not a reasonable charge, to paraphrase Judge Jones here, in the process. Judge Haynes has talked about, well, should we supplement the record? I think a better practice for purposes of setting the law on this, I personally think, would be to remand with instructions to the district court to make the requisite fact-findings because that would allow for more meaningful appellate review. And I see that my time just ended. Thank you so much. Well, I have one other . . . I have just one other question. Does U.S. v. Huey come into this in any respect? At this moment, I can't tell you, but I will address it . . .  Oh, excuse me. I was thinking . . . That was a limitation on restitution. But still spoke in terms . . . yes, I think it does come in because it still speaks in terms of restitution, the bounds of restitution being set by the particular offense, and that is to say the offense that's been charged here. So yes, that is my answer to your question, and I think we discussed that. Thank you so much for the opportunity to talk this morning. Okay.